

FILED

May 21 2018, 5:33 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Russell Ellis
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Robert L. Hartley
Maggie L. Smith
Frost Brown Todd LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael A. Mullett and Patricia
N. March,

*Appellants-Intervenors,*

v.

Duke Energy Indiana, LLC,
Nucor Steel-Indiana, Indiana
Office of Utility Consumer
Counselor,

*Appellees (Applicant / Petitioner,
Intervenor, Statutory Party).*

May 21, 2018

Court of Appeals Case No.
93A02- 1710-EX-2468

Appeal from the Indiana Utility
Regulatory Commission

The Honorable James Atterholt,
Commission Chair

Honorable Sarah Freeman
Honorable James Huston
Honorable Angela Weber
Honorable David Ziegner
Commissioners

Honorable David Veleta
Senior Administrative Law Judge

IURC Case No. 38707 FAC-113

**Bradford, Judge.**

# Case Summary

[1] Appellee Duke Energy Indiana, LLC ("Duke") and Benton County Wind Farm (the "Wind Farm") entered into a contract under which Duke agreed to buy power from the Wind Farm. In 2013, a dispute arose after Duke failed to buy energy from the Wind Farm. The Wind Farm filed suit claiming that Duke owed it money for lost production under the parties' contract. The parties eventually settled and Duke went to the Indiana Utility Regulatory Commission (the "Commission") seeking to recover its costs from ratepayers. Appellants Michael A. Mullett and Patricia N. March (the "Appellants") intervened in the proceeding and objected to Duke's request. After a hearing on the matter, the Commission approved Duke's request to recover the costs from its ratepayers over a twelve-month period.

[2] Appellants now appeal arguing that the Commission's order is contrary to law because the damages are "liquidated" and "hypothetical" and it amounts to impermissible retroactive ratemaking. Finding that substantial evidence supports the Commission's order and no other error, we affirm.

# Facts and Procedural History

[3] In 2006, Duke and the Wind Farm entered into a Renewable Wind Energy Power Purchase Agreement ("PPA") in which Duke agreed to purchase a portion of the energy generated by the Wind Farm. After purchasing the

energy from the Wind Farm, Duke would immediately sell it into the Midcontinent Independent System Operator ("MISO") wholesale energy market. The Indiana Utility Regulatory Commission ("the Commission") approved the PPA in its entirety in 2006, concluding that "the terms of the Wind [PPA were] reasonable." Duke App. Vol. II, p. 17.

[4] The Commission also recognized that Duke would be incurring significant costs in connection with the PPA. Consequently, in order to further the Commission's policy of encouraging the development of renewable resources, the Commission authorized Duke to recover all of its PPA costs from ratepayers for the entire twenty-year term:

> [T]he Commission finds that Duke Energy Indiana should be authorized to recover the Wind [PPA] costs provided for in the contract for the full 20 year term of that contract[.]

Duke App. Vol. II, p. 19.

[5] Following changes to certain rules and regulations in 2013, a dispute arose regarding the extent of Duke's contractual obligations to the Wind Farm. Duke believed that based upon the parties' contract, it was only required to accept and pay for energy that the Wind Farm generated and delivered to Duke. The Wind Farm, however, interpreted the contract to mean that Duke had to pay for lost production in addition to the power it delivered to Duke.

[6] The Wind Farm sued Duke in federal court to resolve the disputed contract interpretation. The federal district court agreed with Duke's interpretation and

granted Duke's motion for summary judgement in 2015. The Wind Farm appealed to the Seventh Circuit, which agreed with the Wind Farm's interpretation, reversed the district court's ruling, and remanded with instructions for a determination of damages, *i.e.* how much Duke owed the Wind Farm for lost production.

[7]  The Wind Farm and Duke entered into settlement negotiations. At the conclusion of the settlement negotiations, the parties agreed on $29 million, which Duke believed was approximately equal to what it would have cost Duke and its ratepayers had the parties agreed with the Wind Farm's contact interpretation at the outset.

[8]  Duke reported to the Commission in its Fuel Cost Adjustment ("FAC") filing on July 27, 2017, that the dispute between Duke and the Wind Farm had settled.[1] In its report, Duke also indicated its intention to recover the lost production costs from ratepayers over a six-month period.[2] The Office of Utility Consumer Counselor (the "OUCC") had no objection to Duke's recovery of the $29 million as costs Duke incurred under the PPA, but requested that the recovery be spread over a twelve-month period rather than the six-month period Duke had proposed. Duke agreed to spreading the recovery out over a twelve-month period. On September 21, 2017, Duke filed

---

[1] Duke kept the Commission updated on the status of the dispute throughout the litigation and settlement process with quarterly FAC filings.

[2] Duke had repeatedly indicated that this was a possibility in its previous sixteen filings with the Commission.

its Proposed Form of Order in which it proposed to recover the $29 million through rates over a twelve-month period.

[9] Meanwhile, Appellants intervened in this proceeding as ratepayers and filed a Brief in Opposition to Approval of Liquidated Damages Payment as an Expense Recoverable through Rates as their legal objection to Duke's Proposed Order. Thereafter, Duke filed its Response to Appellant's Brief in Opposition. On September 27, 2017, the Commission entered its final order approving proposed Duke's rate recovery over a twelve-month period.

# Discussion and Decision

[10] The Indiana Utility Regulatory Commission was created by the General Assembly "primarily as a fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature." *Ind. Gas Co. v. Ind. Fin. Auth.*, 999 N.E.2d 63, 65 (Ind. 2013) (internal quotation removed). The Commission's "goal is to ensure that public utilities provide constant, reliable, and efficient service to the citizens of Indiana." *Citizens Action Coalition of Ind., Inc. V. S. Ind. Gas and Elec. Co.*, 70 N.E.3d 429, 438 (Ind. Ct. App. 2017). An order issued by the Commission is presumed valid unless the contrary is clearly apparent. *Id.*

[11] The standard for our review of decisions of the Commission is governed by Indiana Code section 8-1-3-1, which the Indiana Supreme Court has interpreted as providing a tiered standard of review.

> A multiple-tier standard of review is applicable to the IURC's orders. A court on review must inquire whether specific findings exist as to all factual determinations material to the ultimate conclusions; whether substantial evidence within the record as a whole supports the findings of fact; and whether the decision, ruling, or order is contrary to law.

*Citizens Action Coal. of Ind., Inc. v. Pub. Serv. Co. of Ind.*, 612 N.E.2d 199, 201 (Ind. Ct. App. 1993) (citations omitted). In applying this standard, "[w]e review the conclusions of ultimate facts, or mixed questions of fact and law, for their reasonableness, with greater deference to matters within the [Commission's] expertise and jurisdiction." *Citizens Action Coal. of Ind., Inc. v. Duke Energy Ind., Inc.*, 16 N.E.3d 449, 457 (Ind. Ct. App. 2014). Additionally, "[w]e neither reweigh the evidence nor asses the credibility of witnesses and consider only the evidence most favorable to the [Commission's] findings*." Ind. Gas Co., Inc. v. Ind. Fin. Auth.*, 999 N.E.2d 63, 66 (Ind. 2013). "On matters within its jurisdiction, the [Commission] enjoys wide discretion and its findings and decision will not be lightly overridden simply because we might reach a different decision on the same evidence." *Citizens Action Coal. of Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 70 N.E.3d 429, 439 (Ind. Ct. App. 2017).

# I.  Recovery from Ratepayers

[12] Appellants make several arguments as to why the Commission's order is contrary to law which we have consolidated and restated. First, Appellants argue that the Commission's order was contrary to law because the damages were "liquidated" and "hypothetical." Appellants also argue that the

Commission acted contrary to law when it approved Duke's recovery from ratepayers because it amounts to impermissible retroactive ratemaking.

## A.   Liquidated "Hypothetical" Damages

[13] The Commission approved the PPA between Duke and the Wind Farm in its entirety in 2006. The PPA detailed, among other things, procedures for the sale and purchase of energy and a calculation of damages if Duke failed to purchase energy from the Wind Farm. The Commission also approved full recovery from ratepayers of *all* costs that Duke incurred from the PPA over its entire twenty-year term.

[14] In early 2013, after Duke failed to purchase energy from the Wind Farm, it became apparent that the two parties differed on their interpretations of the contract. This disagreement over whether Duke owed the Wind Farm for lost production led to the Wind Farm filing suit in federal court. During the course of the litigation, Duke kept the Commission updated in each of its quarterly FAC filings. Duke also was clear that when the dispute was resolved, it would seek to recover from ratepayers any amount that Duke eventually paid to the Wind Farm.

[15] Once the dispute settled, Duke reported in a FAC filing on July 27, 2017, that the dispute had been resolved and it now sought to recover the costs it incurred under the PPA. The Commission was presented with evidence that the "settlement amount is no more than customers would have paid had a different offer been submitted to MISO from March 2013 through June 2017, and is less

than what potentially could have been awarded has a settlement not been reached." Appellants' App. Vol. II, p. 13. The Commission subsequently found that "[t]he evidence of record demonstrates that the [Wind Farm] settlement is in the best interest of customers and the costs are reasonable for what is owed to [the Wind Farm] under the Commission-approved [PPA]". Appellants' App. Vol. II, p. 13. Due to the fact that the lost production costs arose from the PPA, the Commission found that Duke was permitted to recover the $29 million from its ratepayers.

[16] As for the term "liquidated damages," Appellants have not cited to any cases to support the proposition that the term "liquidated damages" in a contract precludes Duke's recovery from ratepayers. Furthermore, there is no authority to support Appellants' claim that the damages amount is purely hypothetical and therefore unrecoverable from ratepayers.

[17] The Seventh Circuit found that Duke was obligated under the PPA to "pay for power not taken." *Benton Cty. Wind Farm LLC v. Duke Energy Ind., Inc.*, 843 F.3d 298, 303 (7th Cir. 2016). The parties reached a "settlement amount [that] is no more than customers would have had had a different offer been submitted to MISO from March 2013 through June 2017, and is less than what potentially could have been awarded had a settlement not been reached." Appellants' App. Vol. II, p. 13. The Commission subsequently found that the "7th Circuit decision interpreting the terms of the contract does not affect our previous approval of this contract." Appellants' App. Vol. II, p. 13.

[18] The evidence of record demonstrates that the "[Wind Farm] settlement is in the best interest of customers and the costs are reasonable for what is owed to [the Wind Farm] under the Commission-approved [PPA]." Appellants' App. Vol. II, p. 13. There is also evidence in the record that the OUCC—which represents ratepayers, consumers, and members of the general public—appeared and had no objection to the proposed recovery except that it be spread out over a twelve-month period. Specifically, the representative for the OUCC testified that "the Commission has approved longer recovery times for similar settlements as an acceptable way to recover these costs while mitigating the impact on ratepayers." Appellants' App. Vol. II, p. 121. The Commission was also presented with evidence from Duke's Director of Fuels & Systems Optimization that the amount paid in the settlement is materially equivalent to what the ratepayers would have paid had Duke agreed with the Wind Farm's interpretation of the PPA at the outset. The evidence in the record readily supports the Commission's decision to authorize Duke's recovery from ratepayers.

## B. Retroactive Ratemaking

[19] Appellants also argue that the Commission's order is contrary to law because allowing Duke to recover the costs amounts to impermissible retroactive ratemaking. The fact that the damages arose from a past dispute regarding a contract interpretation does not automatically make the Commission's order contrary to law. This appeal arose out of an FAC proceeding, not a rate case. Similar to a Gas Cost Adjustment proceeding, the prohibition against

retroactive ratemaking does not apply because, in both, the rates that are set are subject to subsequent reconciliation after historical costs have become known. *See Ind. Gas Co., Inc. v. Office of Utility Consumer Counselor*, 575 N.E.2d 1044 (Ind. Ct. App. 1991).

[20] Moreover, the Commission's decision is consistent with its decisions in similar disputes involving Indianapolis Power and Light ("IPL") and Northern Indiana Public Service Company ("NIPSCO"). In both proceedings, IPL and NIPSCO were involved in disputes regarding their wind farm power purchase agreements and were seeking to recover lost production costs from ratepayers. Based on how these proceedings were handled by the Commission, it appears that the Commission prefers that utilities defer seeking recovery from their ratepayers until the dispute is resolved and the full amount is known.

[21] In accordance with the Commission's clear preference to defer payment until a dispute is settled, Duke kept the Commission updated throughout the course of the litigation. Specifically, Duke consistently advised the Commission and the parties throughout the litigation and settlement process that future reconciliation by Duke to recover the costs may be necessary.[3] When the cost incurred became known and the dispute was resolved, Duke provided the Commission with the new information in an FAC filing.

---

[3] Duke repeatedly indicated in sixteen filings (FAC-97–FAC-112) that it would seek to recover costs under the PPA.

After reviewing the record, there is no indication that any of the parties or the Commission thought Duke would be forfeiting its right to recover the deferred costs in a future FAC proceeding nor is there any evidence that this deferral was improper. In fact, based on proceedings with other utilities, it appears that Duke acted in accordance with the Commission's preferences for such matters. The Commission has the expertise to analyze and weigh the evidence in this case, and, after our review of the record, we conclude that there is substantial evidence support its decision to approve Duke's recovery from ratepayers.

The judgment of the Commission is affirmed.

Baker, J., and Kirsch, J., concur.